UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GODWIN CHUNGAG AND IRENE S.
CHUNGAG,                                         Case No. 10-14648

            Plaintiffs,                          Honorable Nancy G. Edmunds

v.

WELLS FARGO BANK, N.A., also d/b/a
WELLS FARGO HOME MORTGAGE,

            Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [2]**

        This mortgage-related litigation comes before the Court on Defendant Wells Fargo

Bank, N.A. ("Wells Fargo")'s motion to dismiss.  The Court has diversity jurisdiction over

this matter.  It arises out of a note and mortgage executed in connection with Plaintiffs'

October 30, 1998 purchase of real property located at 525 Lodge Drive, Detroit, Michigan

(the "Property") for $250,000.  To make that purchase, Plaintiffs made a $50,000 down

payment and executed a promissory note for $200,000 that was secured by a 30-year

mortgage on the Property.  (Compl. ¶¶ 5-6.)  The mortgage was initially granted to First

Chicago NBD Mortgage Company and later assigned to Wells Fargo.  (*Id.* at ¶ 7.)

        Plaintiffs' complaint seeks (1) a declaration that Plaintiffs are not in default on their

mortgage loan and an injunction staying a pending foreclosure sale on a claim, brought

pursuant to Mich. Ct. R. 3.411 and Mich. Comp. Laws § 600.2932, to quiet title to the

Property; (2) damages on a claim that Defendant violated the Michigan Consumer

Protection Act, Mich. Comp. Laws § 445.901, *et seq.*; (3) damages on a state common-law claim for defamation; (4) damages on a state common-law claim for intentional infliction of emotional distress; (5) exemplary damages; and (5) damages on a claim that Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692(e).  For the reasons set forth below, Defendant's motion to dismiss is GRANTED.

## I.   Facts

### A.  Note and Mortgage Terms and Plaintiffs' Payment History

On October 30, 1998, Plaintiffs executed a mortgage on the Property as security for a $200,000 note executed that same day by Plaintiff Goodwin Chungag.  (Pls.' Resp., Ex. 1, Note and Mtge.)[1]  The 30-year mortgage provided for monthly payments, "with the full debt, if not paid earlier, due and payable on November 1, 2028."  (*Id.*, Mtge. at 1.)

The following facts are not in dispute.  Pursuant to the terms of the note and mortgage, Plaintiffs were required to make monthly payments of $1,264.14, and the mortgage loan matured on November 1, 2028.  Between 2006 and 2009, Plaintiffs paid double the amount of their monthly payments.  Plaintiffs also made a payment of $52,214.48 on July 7, 2007.  Wells Fargo applied all excess payments to pay down the principal balance on Plaintiffs' mortgage note.  In addition to these excess payments in 2006 through 2009, Plaintiffs continued to make their monthly payments until early 2010 when they were unable to make any payments on their mortgage loan.  The principal

[1]When reviewing the sufficiency of a complaint under Fed. R. Civ. P. 12(b)(6), the Court may consider documents not formally incorporated by reference or attached to a complaint when the "document is referred to in the complaint and is central to the plaintiff's claim[.]" *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (internal quotation marks and citation omitted).

balance on Plaintiffs' mortgage loan as reflected on Wells Fargo's January 21, 2010 monthly mortgage statement is $89,188.41. (Compl. ¶¶ 8-9, 11,13, 16; Compl., Ex. 4, Pls.' payment history.)

### B.  Foreclosure Proceedings

After Plaintiffs stopped making their monthly mortgage loan payments, Wells Fargo declared them in default. (Compl. ¶ 17.) On or about November 8, 2010, Plaintiffs received a Notice of Foreclosure Sale scheduling the sheriff's sale of the Property for November 17, 2010. (*Id.* at ¶¶ 23, 25.) On November 15, 2010, Plaintiffs filed this action in state court. It was subsequently removed here based on diversity jurisdiction.

This matter is now before the Court on Defendant Wells Fargo's motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.  Rule 12(b)(6) Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of all the elements

3

of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009)  The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1950 (internal quotation marks and citation omitted).  Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (internal quotation marks and citation omitted).  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*  In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 1949 (internal quotation marks and citation omitted).

## III.   Analysis

The Court begins its analysis by examining Plaintiffs' federal claim -- that Defendant Wells Fargo violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692(e).

### A.  The Fair Debt Collection Practices Act - Not Applicable

4

In Count VI of their Complaint, Plaintiffs claim that Wells Fargo is a debt collector that has engaged in abusive, deceptive and unfair collection practices by "falsely claiming that Plaintiffs' lump sum payments did not advance the payments due date;" by "telling Plaintiffs that the Bank has an appraisal of their house and it can be sold for twice the amount owed on the loan;" and by "falsely increasing Plaintiffs' income to prevent them from qualifying for loan modification."  (Compl. ¶ 70.)  The Fair Debt Collection Practices Act ("FDCPA") prohibits a "debt collector" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  The statutory definition of a "debt collection," however, expressly excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."  15 U.S.C. § 1692a(6)(F)(iii).

Defendant Wells Fargo argues that, because Plaintiffs' debt was not in default at the time that debt was assigned to it, Wells Fargo does not fall with the statutory definition of a "debt collector," and thus Plaintiffs cannot state a claim under the FDCPA against Wells Fargo.  Plaintiffs respond that, because Wells Fargo is a loan servicer and not lender, it falls within the statutory definition of a "debt collection" under the FDCPA.  This Court disagrees with Plaintiffs.

As recently observed in *Morris v. HomEQ Servicing Corp.*, No. 288631, 2010 WL 537745, *4 (Mich. Ct. App. Feb. 16, 2010), *lv. denied*, 783 N.W.2d 367 (Mich. 2010), "a mortgage loan servicer is not a 'debt collector' under the FDCPA where the borrower was not in default at the time the servicer acquired its interest in the loans."  *See also Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir. 1996) (observing that

5

"a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned").  Here, it is not disputed that Plaintiffs' mortgage loan was assigned to Wells Fargo.  (Compl. ¶ 7.)  As shown from the exhibits attached to Plaintiffs' Complaint, Wells Fargo is the mortgage loan servicer on Plaintiffs' mortgage loan.  More importantly, it is not and cannot be disputed that, at the time Wells Fargo became the mortgage loan servicer, Plaintiffs  were not in default on their mortgage loan.  (Compl., Ex. 3, 1/21/10 Mo. Mtge Stmt.; Ex. 4, Payment History.)  Accordingly, in light of these undisputed facts and the above-cited authority, Defendant's motion to dismiss Plaintiffs' FDCPA claim is granted.

The Court now examines whether Plaintiffs' state-law claims should be dismissed.

### B.  Michigan Consumer Protection Act - Not Applicable

In Count II of their Complaint, Plaintiffs allege that Wells Fargo violated Michigan's Consumer Protection Act ("MCPA").  Wells Fargo argues that Plaintiffs' MCPA claim fails because residential mortgage loan transactions are exempt from the MCPA.  This Court agrees with Wells Fargo that it is exempt from the MCPA.

Section 904(1)(a) of the MCPA expressly provides that it does not apply to "transaction[s] or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States."  Mich. Comp. Laws § 445.904(1)(a).  The Michigan Supreme Court, construing § 445.904(1)(a), has held that the MCPA does not apply where "the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Smith v. Globe Life Ins. Co.*, 597 N.W.2d 28, 38  (Mich. 1999).  Following *Smith*, both Michigan courts and federal courts applying Michigan law have consistently held that the

6

MCPA does not apply to claims arising out of residential mortgage loan transactions. *See, e.g., Newton v. Bank West*, 686 N.W.2d 491, 494 (Mich. Ct. App. 2004); *Mills v. Equicredit Corp.*, 294 F. Supp. 2d 903, 910 (E.D. Mich. 2003), *aff'd*, 172 F. App'x 652 (6th Cir. 2006). Plaintiffs' reliance on *Attorney General v. Diamond Mortgage Co.*, 327 N.W.2d 805, 811 (Mich. 1982) -- for the proposition that the statutory language exempting "transaction[s] or conduct specifically authorized" does not exempt misconduct -- is misplaced. *See Mills*, 249 F. Supp. 2d at 910 (observing that the Michigan Supreme Court in *Smith* limited its earlier decision in *Diamond Mortgage*).

Plaintiffs do not dispute that their claims arise out of a residential mortgage loan transaction or that mortgage loan lenders are exempt under the MCPA. Rather, they argue that, because Wells Fargo is a mortgage loan servicer and not a lender, it is not exempt under the MCPA. This argument was recently rejected by the Michigan Court of Appeals in *Morris*. It reasoned that, because mortgage loan servicers are specifically authorized under state law to engage in mortgage loan transactions and are also subject to the supervisory authority and control of a state commissioner, they are exempt.

> Residential mortgage loan transactions by banks -- which are specifically authorized under state and federal law -- are exempt from the MCPA. *Newton v. West*, 262 Mich. App. 434, 441-442, 686 N.W.2d 491 (2004). Likewise, because defendant is a mortgage loan servicer that is specially authorized under the Mortgage Brokers, Lenders, and Servicers Licensing Act (MBLSLA), MCL 445.1651 *et seq.*, to engage in mortgage loan transactions, subject to the supervisory authority and control of the Commissioner of the Office of Financial and Insurance Services, MCL 445.1651a(b); MCL 445.1661(1), we find that defendant is exempt from the provisions of the MCPA. MCL 445.904(1)(a).

*Morris v. HomEQ Servicing Corp.*, 2010 WL 537745 at *5.

Although Wells Fargo, a national bank, is not subject to state regulation under the MBLSLA, the exemption still applies because its activities are regulated by the federal

7

government and Mich. Comp. Laws § 445.904(1)(a) exempts "transaction[s] or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this State or the United States." (Emphasis added). It is well-established that the quoted language exempts the lending activities of banks regulated by either the State of Michigan or the federal government. *See Newton*, 686 N.W.2d at 494 ("It is abundantly clear, on the basis of a mere overview of applicable law, that federal savings banks making residential mortgage loans are engaged in transactions specifically authorized under laws administered by a regulatory board or officers acting under United States statutes.").

Wells Fargo is a national banking association that is chartered and governed by the National Bank Act, and its conduct is governed by federal law. The Office of the Comptroller of the Currency ("OCC"), the primary federal regulator of all national banks, including Wells Fargo, also closely regulates operating subsidiaries of national banks. *See* 12 C.F.R. § 5.34(e)(3).[2] Because operating subsidiaries of national banks are subject to the same extensive OCC regulation as national banks, the MCPA does not apply to the residential mortgage lending and/or servicing activities of Wells Fargo's operating

_____

[2]12 C.F.R. § 5.34(e)(3) provides, in pertinent part, that:

> *Examination and supervision.* An operating subsidiary conducts activities authorized under this section pursuant to the same authorization, terms and conditions that apply to the conduct of such activities by its parent national bank. If, upon examination, the OCC determines that the operating subsidiary is operating in violation of law, regulation, or written condition, or in an unsafe or unsound manner or otherwise threatens the safety or soundness of the bank, the OCC will direct the bank or operating subsidiary tot take appropriate remedial action, which may include requiring the bank to divest or liquidate the operating subsidiary, or discontinue specified activities.
> . . .

subsidiaries like Wells Fargo Home Mortgage. Accordingly, Plaintiffs' MCPA claims against Defendant Wells Fargo are dismissed.

### C. State-Law Defamation Claim - Preempted by Federal Law

In Count III of their Complaint, Plaintiffs allege that Wells Fargo defamed them when it "accused Plaintiffs of defaulting on the terms of a note dated October 30, 1998;" published that accusation "in public records such as credit files;" and harmed Plaintiffs' reputations and Plaintiff Godwin Chungag's ability to obtain a "prominent supervisory position with employers including NASA." (Compl. ¶¶ 40-41, 44, 46.) Defendant Wells Fargo responds that, because Plaintiffs' state-law defamation claim is based on the reporting of credit information, it is preempted by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681t(b)(1)(F). This Court agrees with Defendant.

Section 1681t(b)(1)(F) of the FCRA provides, in pertinent part, that "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ." As recently observed in *Barkho v. Homecomings Financial, LLC*, 657 F. Supp. 2d 857, 865 (E.D. Mich. 2009), "§ 1681s-2 only regulates conduct related to the reporting of credit information." Thus, a "defamation claim" that "stems directly from the allegedly inaccurate credit reporting by the Defendant" fits "squarely within section 1681s-2" and is preempted under section 1681t(b)(1)(F) of the FCRA. *Id. Accord, Munson v. Countrywide Home Loans, Inc.*, No. 08-13244, 2008 WL 5381866, *5 (E.D. Mich. Dec. 17, 2008) (determining that, because "the reporting of credit information is the subject matter regulated by § 1681s-2 [of the FCRA] and the plaintiffs' breach of contract action was based on the defendant's "actions

9

in reporting Plaintiffs' payment history," that claim was preempted by the FCRA).

Plaintiffs' state-law defamation claim here is based on Wells Fargo's alleged inaccurate reporting of their payment history on the residential mortgage loan.   Thus, consistent with the holdings in *Barkho* and *Munson*, this defamation claim fits within § 1681s-2 of the FCRA and is thus preempted under § 1681t(b)(1)(F) of that Act. Accordingly, Plaintiffs' state-law defamation claim against Defendant is dismissed.

### D.  State-Law Claim for Intentional Infliction of Emotional Distress Fails

In Count IV of their Complaint, Plaintiffs assert a state law tort claim for intentional infliction of emotional distress.  They allege that "Defendant's conduct as outlined above was intentional . . . extreme, outrageous, and of such character as not to be tolerated by a civil society." (Compl. ¶¶ 48-49.)  They further allege that Defendant's agents threatened to evict them and sell their home thus causing them severe and serious emotional distress. (*Id.* at ¶¶ 52-57.)  Defendant's motion to dismiss argues that Plaintiffs' tort claim is based on Defendant's pursuit of a contractual remedy (mortgage foreclosure) by a legally permissible means (foreclosure by advertisement) and not any extreme or outrageous conduct.   It further argues that, the mere fact that Plaintiffs are disputing Wells Fargo's claim that they are in default and are thus arguing that they have not breached their mortgage loan contract, is not enough to state a tort claim for intention infliction of emotional distress.  This Court agrees with Defendant.

Plaintiffs must allege facts showing the following to state a claim of intentional infliction of emotional distress:  "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress."  *Morris*, 2010 WL 537745 at *5 (internal quotation marks and citation omitted).  "Liability for such a claim has been found only where

10

the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* (internal quotation marks and citation omitted). Plaintiffs allege here only facts that fit the typical, disputed home foreclosure.  As the Michigan Court of Appeals recently observed, when the essence of the plaintiff's claim is that the defendant "breached contracts with him in various ways and foreclosed on his property," then "[t]his type of activity does not rise to the level of conduct necessary to satisfy the standard in Michigan case law." *Usery v. Option One Mortgage Corp.*, No. 271560, 2007 WL 2192657, *16 (Mich. Ct. App. July 31, 2007) (affirming dismissal of the plaintiff's claim of intentional infliction of emotional distress), *lv. denied*, 746 N.W.2d 101 (Mich. 2008).

In *Robbins v. Mortgage Electronic Registration Systems, Inc.*, No. 1:09-CV-295, 2009 WL 3757443, *8 (W.D. Mich. Nov. 9, 2009), the court dismissed the plaintiffs' claim of intentional infliction of emotional distress for failure to state a claim because "[n]one of the facts alleged in the complaint suggest[ed] any extreme or outrageous conduct on the part of Defendants."  The court further observed that "actions taken to foreclose on a mortgage generally do not rise to the level of extreme and outrageous conduct." *Id.* (citing *Usery*). The same reasoning and result apply here.

Plaintiffs allege no facts that suggest any extreme or outrageous conduct on the part of Defendant Wells Fargo.  Rather, similar to the plaintiff in *Kozma v. Chelsea Lumber Co.*, No. 290713, 2010 WL 2836327, *6 (Mich. Ct. App. July 20, 2010), Plaintiffs here "merely allege[] that [Defendant's] breach of contract amounted to extreme or outrageous conduct." The *Kozma* court clarified that, under Michigan law, "'a tort claim must be based instead

11

on the breach of a duty distinct from the contract.'" *Id.* (quoting *Hayley v. Allstate Ins. Co.*, 262 Mich. App. 571, 577; 686 NW2d 273 (2004)).  Because Plaintiffs allege no facts that would impose a duty on Defendant Wells Fargo that is distinct from its contractual obligations under their mortgage loan, they cannot state a claim of intentional infliction of emotional distress.

Plaintiffs' response suggests that their claim is based not merely on Defendant's attempt to foreclose on their home.  They argue that it is also based on Defendant's intentional reporting of false information on their credit records, i.e., that they were in default on their mortgage loan, and it was this conduct that caused them severe emotional distress.  (Pls. Resp. at 16.)  For the reasons stated above, to the extent Plaintiffs' claim of intentional infliction of emotional distress is based on Defendant's credit reporting activities, that claim is preempted under § 1681t(b)(1)(F) of the FCRA.

For the above-stated reasons, Plaintiffs' claim of intentional infliction of emotional distress is dismissed.

## E.  Quiet Title/Breach of Contract - Failure to State a Claim

In Count I of their Complaint, Plaintiffs allege that "there is no default on the loan" because "Plaintiffs are ahead of their payment schedule by at least $71,000."  (Compl. ¶¶ 27-28.)  Plaintiffs' quiet title claim contends that they are entitled to (1) a declaration that they are not in default under the terms of the mortgage and note; (2) a stay of the pending sheriff's sale because Wells Fargo has no right to foreclose; and (3) a declaration that "there is no payment currently due on the [mortgage] loan and there shall not be any payment due unless and until the outstanding principal balance on the loan is higher tha[n] the amount due under the amortization schedule of the loan" that Plaintiffs have created.

12

(*Id.* at ¶¶ 11, 29, 32.)  Both parties agree that Plaintiffs' quiet title claim rises and falls upon this Court's interpretation of the mortgage loan contract.  (Def.'s Mot. at 5; Pls.' Resp. at 11.)  Plaintiffs argue that, because they did not identify their additional principal payments as "prepayments," they should be considered as advance payments of their monthly mortgage obligation thereby satisfying their monthly obligations years into the future.  Construing the plain, unambiguous language of the Plaintiffs' mortgage and note as it is required to do under Michigan law, this Court rejects Plaintiffs' argument.

### 1.  General Principles - Contract Interpretation

In interpreting the mortgage and note, Michigan's general rules of contract interpretation apply.  First, the court must determine whether the contract language at issue is ambiguous or unambiguous.  Second, the court must construe the contract.

The question of whether a contract is ambiguous is a question of law for the court.  *Steinmetz Elec. Contractors Ass'n v. Local Union No. 58*, 517 F. Supp. 428, 432 (E.D. Mich. 1981); *Mayer v. Auto-Owners Ins. Co.*, 338 N.W.2d 407, 409 (Mich. Ct. App. 1983).  Construction of a contract, whether it is ambiguous or unambiguous, is also a question of law for the court.  *Petovello v. Murray*, 362 N.W.2d 857, 858 (Mich. Ct. App. 1984); *Fragner v. Am. Comm. Mut. Ins. Co.*, 502 N.W.2d 350, 352 (Mich. Ct. App. 1993).

A contract which admits of but one interpretation is unambiguous.  *Fragner*, 502 N.W.2d at 352.  In contrast, a contract provision is ambiguous if it is capable of two or more constructions, both of which are reasonable.  *Petovello*, 362 N.W.2d at 858.

If a contract is clear and unambiguous, the court must enforce the contract as written, according to its plain meaning, *Clevenger v. Allstate Ins. Co.*, 505 N.W.2d 553, 557 (Mich. 1993),  without looking to extrinsic evidence.  *Upjohn Co. v. New Hampshire Ins. Co.*, 476

N.W.2d 392, 396 n. 6 (Mich. 1991).  It is improper for the court to ignore the plain meaning of the policy's language in favor of a technical or strained construction.  *Arco Indus. Corp. v. Travelers Ins. Co.*, 730 F. Supp. 59, 66 (W.D. Mich. 1989).

### 2.  Relevant Terms of Mortgage and Note

The 30-year mortgage at issue here was granted to provide security to the lender for Plaintiff's $200,000 note, "which provides for monthly payments, with the full debt, if not paid earlier, due and payable on November 1, 2028."  (Pls.' Resp., Ex. 1, Mtge. at 1.)  Pursuant to the terms of that mortgage, Plaintiffs agreed to "promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note."  (*Id.*, Mtge. at 2, ¶ 1.)  Plaintiffs also agreed, "[s]ubject to applicable law or to a <u>written</u> waiver by Lender," to make monthly payments to the Lender for "escrow items."  (*Id.*, Mtge. at 2, ¶ 2 (emphasis added).)  Specifically, the parties' mortgage provides, in pertinent part, that:

> **2.  Funds for Taxes and Insurance**.  Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender <u>on the day monthly payments are due under the Note</u>, until the Note is paid in full, a sum ("Funds") for:  (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." . . .  The Funds are pledged as additional security for all sums secured by this Security Instrument. . . .

(*Id.,* Mtge. at 2-3, ¶ 2 (emphasis added).)  Finally, in paragraph 3, the mortgage expressly provides how payments are to be applied.

> Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied:  first, to any prepayment charges due

under the Note; second, to amounts payable under paragraph 2 [escrow items]; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

(*Id.*, Mtge. at 3, ¶ 3.)

The $200,000 note provides that:

. The borrower "will pay principal and interest by making payments <u>every month</u>." (*Id.*, Note at ¶ 3(A).)

. The borrower "will make my monthly payments on the 1st day of <u>each month</u> beginning on DECEMBER 1, 1998." (*Id.*)

. The borrower "will make these payments <u>every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal</u>." (*Id.*)

. The "<u>monthly payment</u> will be in the amount of U.S. $1,264.14. (*Id.*, Note at ¶ 3(B).)

. The borrower has "the right to make payments of principal at any time before they are due. A payment of principal only is known as a 'prepayment.'" (*Id.*, Note at ¶ 4.)

. When the borrower makes a prepayment, the borrower "<u>will tell the Note Holder in writing that I am doing so</u>." (*Id.*)

. the borrower "may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of [the borrower's] prepayments to reduce the amount of principal that [the borrower] owe[s] under this Note. (*Id.*)

. If [the borrower] makes a partial prepayment, <u>there will be no changes in the due date or in the amount of [the borrower's] monthly payments unless the Note Holder agrees in writing to those changes</u>." (*Id.*)

. If [the borrower] do[es] not pay <u>the full amount of each monthly payment on the date it is due, [the borrower] will be in default</u>." (*Id.*, Note at ¶ 6(B).)

(*Id.*, Note (emphasis added).)

### 3. Court's Interpretation of Contract Language

Because Plaintiffs failed to make their monthly mortgage payments on their due date, they are in default under the plain, unambiguous language of the parties' mortgage and note. (*Id.*, Note at ¶ 6(B).) Whether Plaintiffs' excess payments in 2006 through 2009 are considered "prepayments" of principal does nothing to obviate the undisputed fact that Plaintiffs have not paid their monthly mortgage payments by their due date and are in default. There is no contractual language that supports Plaintiffs' claim that the mortgage or note distinguish between "prepayments," which serve only to reduce the principal balance, and "advance payments" that would both reduce their principal balance and advance the due date of their next loan payment. Rather, the plain language of both the mortgage and note consistently states that, to avoid default, monthly payments must be made by their due date until the note is paid in full. (*See id.*, Mtge. and Note.) Absent a written waiver, Plaintiffs cannot avoid default by claiming they made "advance payments." The Court's interpretation is consistent with language in the mortgage that expressly states that, "[u]nless the Lender and Borrower otherwise agree in writing," any application of insurance or condemnation proceeds to the principal balance owed on the Note "shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 [of the mortgage] or change the amount of payments." (*Id.*, Mtge. at 3, ¶ 5 (insurance); Mtge. at 5, ¶ 10 (condemnation).) Michigan contract law precludes this Court from changing the plain, unambiguous terms of the mortgage and note in the manner Plaintiffs urge.

Because Plaintiffs cannot state a claim to quiet title and are not entitled to the declaratory or injunctive relief they seek, Count I of their Complaint is dismissed.

### F.  Exemplary Damages - Failure to State a Claim

16

In Count V of their Complaint, Plaintiffs assert a claim for exemplary damages.  As the Michigan Court of Appeals observed in *Kozma*, however, "exemplary damages are a form of compensation for an injury and . . . they do not qualify as a cause of action."  *Kozma*, 2010 WL 2836327 at *8.  Because Plaintiffs cannot state a claim on any of the causes of action alleged in their Complaint, Plaintiffs' claim for exemplary damages in Count V is dismissed.

## IV.  Conclusion

For the above-stated reasons, Defendant Wells Fargo's motion to dismiss [2] is GRANTED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  February 17, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 17, 2011, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

17